Dallas O. WILLIAMS, Petitioner,

v.

Dr. Winfred OVERHOLSER, Respondent.

No. 39–58.

United States District Court
District of Columbia,
Civil Division.

May 22, 1958.

————◆————

Richard Arens, Washington, D. C., for petitioner.

Chester H. Gray, Corp. Counsel, Andrew G. Conlyn, George C. Updegraff, Asst. Corp. Counsel, Washington, D. C., for respondent.

PINE, District Judge.

On April 29, 1958 petitioner filed a petition in this Court praying for the issuance of the writ of habeas corpus, and on the day following the Court passed an order directing the Superintendent of St. Elizabeths Hospital, a mental institution, where petitioner is confined, to show cause why the writ should not issue. Respondent filed an answer to the order to show cause, and a hearing was held thereon, after which the case was continued until May 21 in order to permit petitioner's counsel to file an application for a transcript at Government expense of the proceedings in the Municipal Court for the District of Columbia, and for an order directing Dr. Thomas Griffin, Chief of Psychiatric Service of this Court, to make an examination and report on petitioner. The application for a transcript has been withdrawn as it has been supplied and filed herein, and the application for an order directing Dr. Griffin to make an examination and report has been denied.

The facts are as follows: On February 3, 1958 petitioner was charged in the Municipal Court with being drunk or intoxicated on a public street. After a continuance, defendant pleaded guilty to the offense, and the Court ordered a mental examination. Subsequently the Chief Psychiatrist of the District of Columbia General Hospital made a report on the mental condition of defendant, and upon objection being made and after hearing the Municipal Court on its own motion, set aside the plea of guilty and entered an order finding petitioner to be of "unsound mind" and directing that he be confined in St. Elizabeths Hospital until released in accordance with the Act of Congress approved August 9, 1955 (Section 24–301, as amended, D.C.Code 1951).

This is the most recent of petitioner's encounters with the law. It follows an almost incredible record since 1933 of criminal charges and convictions, including manslaughter, assault and battery, assault with intent to kill, shooting with intent to kill, assault with a pistol, and other crimes of violence. See footnote 3 in Williams v. United States, D.C.Cir., 250 F.2d 19, 21. Much of petitioner's adult life has been spent in penal and mental institutions. There is no doubt that he has been a turbulent, dangerous character, but that alone is not sufficient to incarcerate him in a mental institution unless committed there pursuant to law.

In his petition for the writ petitioner claims that his confinement is illegal on the following grounds:

(1) Lack of judicial determination of the competency of petitioner to stand trial, but only a finding of unsoundness of mind.

(2) A lack of substantial evidence to support the finding of unsoundness of mind, and

(3) A claim that petitioner is now competent to stand trial regardless of his mental condition at the time of the Municipal Court hearing.

In connection with the first point raised by petitioner, namely, lack of judicial determination of the competency of petitioner to stand trial, the United States Court of Appeals in Durham v. United States, 99 U.S.App.D.C. 132, 237 F.2d 760, 761 (the 2d Durham case, 1956) has held "competency to stand trial is entirely different from such soundness of mind as would warrant discharge from the hospital" and that a "defendant who is competent to stand trial may nevertheless be suffering from a mental illness * * *." The Court further stated that this distinction was "recog-

nized in Durham's former appeal" which antedated the statute here involved and hereinafter discussed. The question therefore is whether the failure of the Municipal Court to make a judicial determination on competency to stand trial constitutes an illegal detention cognizable under the writ of habeas corpus.

In Williams v. United States, supra, the next preceding criminal proceeding against defendant prior to the instant one, petitioner was found guilty of assault with a dangerous weapon on an indictment returned in 1949 for a shooting occurring in that year. That was his fifth trial and third conviction for that offense, and the case was before the Court of Appeals for the third time. Between his first and second trials he was adjudicated incompetent and committed to a mental institution and again adjudicated incompetent and committed to a mental institution between his third and fourth trials and between his fourth and fifth trials. Among the grounds urged on his last appeal (Williams v. United States, supra), was the contention that he was denied a speedy trial as required by the Sixth Amendment to the Constitution; and the question before the Court was whether when such delay does result in prejudice to the accused "it is just to try him". [250 F.2d 21.] On this point, the Court held that, since the delay had been substantial and the Government had failed to make a showing that the accused suffered no serious prejudice beyond that which ensued from the ordinary and inevitable delay, the indictment should be dismissed.

The statute under which these proceedings are governed is Sec. 24-301, as amended, D.C.Code 1951, supra. It provides in brief that whenever a person is charged with an offense and prior to the imposition of sentence it shall appear to the Court that the accused is of unsound mind or is mentally incompetent so as to be unable to understand the proceedings against him or properly to assist in his own defense, the Court may order the accused committed to the District of Columbia General Hospital for examination and observation; and if after such examination and observation the Chief Psychiatrist of the District of Columbia General Hospital shall report that the accused is of unsound mind or mentally incompetent, such report shall be sufficient to authorize the Court to commit by order the accused to a hospital for the mentally ill, unless the accused or the Government objects, in which event the Court after hearing without a jury "shall make a judicial determination of the competency of the accused to stand trial". It further provides that, if the Court shall find the accused to be then of "unsound mind or mentally incompetent to stand trial, the court shall order the accused confined to a hospital for the mentally ill". And further, it provides that whenever an accused person so confined is restored to mental competency in the opinion of the Superintendent of the Hospital, the Superintendent shall certify such fact to the Clerk of the Court in which the indictment or information against the accused is pending, and that such certification shall be sufficient to authorize the Court to enter an order thereon adjudicating the accused to be competent to stand trial unless the accused or the Government objects, in which event the Court after hearing without a jury "shall make a judicial determination of the competency of the accused to stand trial", and that nothing in the statute shall preclude a person confined under its authority from establishing his eligibility for release under the provisions of this section by a writ of habeas corpus.

It will thus be noted that the statute makes a distinction between unsoundness of mind and mental incompetency to stand trial, a distinction which has been recognized by the United States Court of Appeals as set forth in the second Durham case, above referred to. The statute refers three times to these two mental conditions as follows: (1) when it authorizes the Court to order the accused committed for examination and observation to a mental hospital, the first procedural step in the statute; (2) when it refers to the report to the Court from

such hospital on his mental condition, the second procedural step; and (3) when it refers to the finding to be made by the Court when objection to the report is made, the fourth procedural step. But the statute does not make the distinction in the two mental conditions when it refers to the judicial determination required to be made by the Court, but only refers to the mental competency of the accused to stand trial, which is the third procedural step, and does not make the distinction when it refers to the procedure to be followed and judicial determination to be made upon a claim of restoration of mental competency to stand trial.

■ Where the distinction is made in the two mental conditions, the statute is in the disjunctive and permits the Court to make a finding on either condition; but where no distinction is made, the statute is mandatory and requires the Court to make a judicial determination of the sole mental condition stated, namely competency to stand trial. It would therefore appear that the Court may or may not make a finding on whether the accused is of unsound mind, but must determine whether he is mentally competent to stand trial, when objection is made to the report from the Hospital and a hearing is held, as in this case. If he is found to be of unsound mind the statute requires the Court to commit the defendant to a mental hospital. If the Court also determines him to be incompetent to stand trial the statute requires the same commitment. But as above stated, the statute requires a judicial determination in the latter type of mental condition, but does not require a determination in the former. Cf. Greenwood v. United States, 350 U.S. 366, 373, 374, 76 S.Ct. 410, 100 L.Ed. 412, affirming Greenwood v. United States, 8 Cir., 219 F.2d 376.

■ In this case the Municipal Court has not made a determination on the latter point, namely competency to stand trial, to which the accused is entitled, bearing in mind that under the authoritative decisions of this Circuit he may be of unsound mind and yet competent to stand trial. This failure has resulted in a denial of a right given him by the statute as well as his right, if competent, to a speedy trial under the Constitution.

I, therefore, conclude that petitioner is illegally detained in the absence of a determination of competency to stand trial, and shall order that the writ of habeas corpus issue unless within 10 days from the date of the order signed pursuant to this opinion, or such extension thereof as may be granted for good cause shown, the Municipal Court determines petitioner's mental capacity to stand trial. If at that time he is found incompetent to stand trial he will be committed under the statute to a mental hospital. If he is found competent to stand trial, he will have his trial, and whether convicted or acquitted he will be returned to the mental hospital under the prior commitment on unsoundness of mind. If, then, he believes that he has been restored to soundness of mind he may establish his eligibility for release by a writ of habeas corpus, which is expressly provided for in this statute.

■ Finally, it should be stated that provision for a jury trial is not a requisite to the validity of this statute. All that is required is due process which is satisfied by the judicial hearing which is provided. Barry v. Hall, 68 App.D.C. 350, 98 F.2d 222.

■ With relation to the second point made by petitioner, an examination of the record reveals that there is no basis for his claim of a lack of substantial evidence to support the finding of unsoundness of mind. As to his third point that petitioner is now competent to stand trial regardless of his mental condition at the time of the Municipal Court hearing, it is not the function of this Court to determine in a habeas corpus proceeding, the mental competency of an accused to stand trial on a charge pending against him in the Municipal Court. The only Court that may determine that fact is the Court having jurisdiction of such charge.

Counsel will submit order pursuant hereto.